JOSEPH ELLIS, plaintiff below, *vs.* SAMUEL P. HULL, ESQ. defendant below.—*IN ERROR.*

IT is a settled rule that, in actions on statutes, every circumstance in the description of the offence, contained in the body of the clause which creates it and gives the penalty or forfeiture, must be set forth, so as to bring the defendant within the statute.

Construction of the act regulating marriage and divorce.

If any minister of the gospel or justice of the peace, join any minor in marriage, having a parent, guardian, or master, without being certified of the *consent* of such parent, guardian or master, he incurs the penalty of the act, notwithstanding he may have been duly certified of the *publication* of the intention of such marriage.

THE action below, which was debt, for a penalty of $70 under the act regulating marriage and divorce, was originally

*Franklin,*
January,
1826.

Ellis,
*vs.*
Hull.

commenced before a justice of the peace, and was brought by appeal to Franklin county court, where the plaintiff filed the following declaration:—

And now the said Joseph Ellis in court, complains and declares against the said Samuel P. Hull, in a plea that to the said Joseph the said Samuel render the sum of seventy dollars, which to the said Joseph the said Samuel P. justly owes, and from him unjustly detains, for that heretofore, to wit, on the 17th day of August, 1824, at, &c. the defendant, being one of the justices of the peace within and for the county of Franklin, did, in virtue of his said office of justice of the peace as aforesaid, join in marriage one Sally Ellis daughter of the said Joseph Ellis, to and with one Benjamin B. Robinson, of &c. and the said Joseph avers that the said Sally, at the time of said marriage, was a minor under the legal age of eighteen years, and subject to the guardianship of the said Joseph, her parent and natural guardian, to wit, at, &c. and the said Joseph further avers, that the said Joseph, so being the parent and natural guardian of the said Sally as aforesaid, did not at any time previous to, or at the time of said marriage, consent to, or approve of the same, and that the said Samuel, justice of the peace as aforesaid, at the time of said marriage, or any other time previous thereto, was not certified of any consent of the said Joseph to said marriage, but on the contrary thereof he the said Samuel then and there well knew that the said Sally was a minor as aforesaid, subject to the guardianship of the said Joseph as aforesaid, and that the said Joseph at any time previous to, or at the time of marriage, did not consent to, or approve of the same, but wholly disapproved of the same, to wit, at, &c.—By reason of all which, and by force of the statute in such case made and provided, the said Samuel hath forfeited to the said Joseph, so being the parent and natural guardian of the said Sally as aforesaid, the sum of seventy dollars, yet the said Samuel, though often thereto requested, hath never paid to the said Joseph the said sum of seventy dollars, or any part thereof, but to pay the same hath ever neglected and refused, and still doth neglect and refuse ; to the damage of the said Joseph, as he says, ten dollars, to recover which debt, with said damages and just costs, this suit is brought.

*Royce*, attorney for the plaintiff.

To this declaration there was a general demurrer, and joinder in demurrer ; and the judgment of the county court being, that the declaration was insufficient, this writ of error was brought to reverse that judgment.

The error assigned was the *general error* :—Plea, *in nullo est erratum.*

After solemn argument, the opinion of the Court was pronounced by

PRENTISS, J.   This writ of error is sued, to reverse the judgment of the county court, in an action brought by the plaintiff

*Franklin,*
January,
1826.

Ellis
*vs.*
Hull.

in error, to recover of the defendant, the penalty given by the 4th section of the act regulating marriage and divorce. (*Comp. Stat.* ch. 44, p. 361.) Whether the judgment is to be reversed or affirmed, depends on the sufficiency or insufficiency of the plaintiff's declaration. If the defendant's construction of the statute is correct, and the penalty was not incurred by him, unless he solemnized the marriage, both without publication of the intention of marriage, and without the consent of the parent of the minor, then, to be sure, the declaration is bad; for it is a settled rule in actions on statutes, that every circumstance in the description of the offence, contained in the body of the clause which creates it, and gives the penalty or forfeiture, must be set forth, so as to bring the defendant within the statute. (*Spiers* vs. *Parker*, 1 *T. Rep.* 141. *Gill* vs. *Scrivens*, 7 *T. Rep.* 27.) As the declaration does not negative the publication of the intention of the marriage, the single question, therefore, is, whether the defendant incurred the penalty, by solemnizing the marriage without being certified of the consent of the parent, although publication had been duly made.

The first section of the statute prohibits intermarriages within certain degrees, and declares them null and void. The second section gives authority to solemnize marriages, to every ordained minister in the county in which he is settled, and has his permanent residence, and to every justice of the peace within his proper sphere of jurisdiction. The third section provides, that previous to any marriage being solemnized, the intention thereof shall be published, in the manner therein prescribed; and it is made the duty of the person officiating in the publication, to make and deliver to the parties a certificate, that the intention of marriage between them has been published agreeably to law. Then follows the fourth section, which enacts, *"that if any minister of the gospel, or justice of the peace, shall join any persons in marriage, without a certificate as aforesaid, or before such minister or justice is certified of the consent of the parents', guardians or masters, (if any there be,) if either party be a minor, or shall otherwise than is expressly allowed by this act, join any persons in marriage, they shall, severally, forfeit and pay, &c."* The argument on the part of the defendant is, that the statute must receive a strict construction, and that the word "or," which connects the two first clauses, being taken in its appropriate disjunctive sense, the statute does not prohibit the joining of any persons in marriage, although one is a minor, without consent of parents, provided there has been a publication of the intention of the marriage; and that the concurrence of both circumstances, publication and consent, which a copulative construction would require, is not necessary to authorize the act. One objection which at once arises to this construction is, that if it makes publication of the intention of marriage supersede the consent of parents, it must also make the consent of parents, in every case coming within the purview of the second clause of

Franklin,
January,
1826.

Ellis
vs.
Hull.

the statute, dispense with publication; and the consequence would be, either to involve the statute in repugnancy and inconsistency, or to render the whole of the second clause, which requires the consent of parents, nugatory and ineffectual. To allow the consent of parents to dispense with publication of the intention of marriage, in any case, would be repugnant to the express words of the 3d section of the statute, which requires the intention of marriage to be published in all cases; and if it cannot have this effect, and publication is indispensable in all cases, then the consent of parents cannot be necessary, or have any effect, in any case, and the second clause, which requires it, is idle and nugatory. A construction, involving such consequences, ought not to be admitted, unless the import of the words is clear, and necessarily requires it.

The principle is recognized and distinctly admitted, and is by no means to be departed from in this case, that penal statutes are to be construed strictly, according to the intention of the legislature, as discovered by the import of the words used. It is a primary and leading rule, and at the same time a safe and salutary one, peculiarly adapted to the nature and genius of a free government, that a penal law is not to be construed by equity, so as to extend it to cases not within the correct and ordinary meaning of the expressions of the law. To determine that a case is within the law, the language must authorize the court to say so. If any of the words used, however, are in themselves ambiguous or equivocal, and the sense doubtful, they must of course be construed according as the context and subject matter require them to be, in order to make the whole consistent and sensible, and give them the effect which was intended. Where they are capable of different meanings, that meaning must be taken which will support the intention, and not that which will defeat it. The Court, however, are not to create ambiguity, or arbitrarily give the words a meaning different from their common acceptation. In the case before us, therefore, we are not to depart from the obvious import of the words of the statute, but are to give effect to the law, according to the intention as collected from the words employed. But on the plain sense of the words, and even adopting a strict grammatical construction, the meaning appears to be clear and consistent, and manifestly to bring the case within the statute. If the phraseology of the statute had been somewhat different from what it is, as for instance, if the words had been "shall join any persons in marriage without a certificate as aforesaid, *or consent of parents*, &c.," the grammatical construction, probably, would have been as the defendant now contends it is; and both publication of the intention of marriage and the consent of parents might not have been necessary, but either might have been sufficient to authorize the marriage. In such case, the conjunction "or" would connect words only, and show the relation which the words so connected have to other parts of the same clause or sentence; in the statute as it stands, it con-

*Franklin,*
January,
1826.

*Ellis*
*vs.*
Hull.

nects sentences or clauses of a sentence, and not words merely, and shows the relation which the words so connected have to other branches of the sentence. In *Fairfield* vs. *Morgan,* 5 Boss. & Pull. 53, it was said, *in arguendo,* that a devise over, "if A. should die before attaining his full age or day of marriage," does not take effect by strict grammar, if A. either comes to age or is married; but change the expression to this form, "if A. shall die before attaining his full age, or *before attaining* his day of marriage, then in strict grammar, the devise over takes effect, unless both happen. This example is sufficiently illustrative of the construction, which, in grammatical strictness, the statute requires in the case before us. Indeed, the language of the statute is more full, and both the sense and grammatical construction are more obvious and certain. The words are, "if any minister of the gospel, or justice of the peace, shall join any persons in marriage, without a certificate as aforesaid, or *before such minister or justice is certified* of the consent of the parents, guardians, or masters, (*if any there be*) *if either party be a minor,* or *shall otherwise than is expressly allowed by this act, join any persons in marriage,* &c." Here are three distinct clauses or sentences, connected together and united in one sentence by the word "or," each giving a new sense and direction, and all governed alike by the words, *shall join any persons in marriage.*" Though these words are but once used in respect to the two first clauses, and go to the whole of both, they are nevertheless two several sentences, and are to be construed in the same manner as if the words were again introduced after the word "or," as they are in the third clause. A repetition of the words was unnecessary, and would have added nothing to the precision or perspicuity of the sense, or conveyed any other meaning than the words used themselves express. Each clause contains a several prohibition by itself, neither superseding or taking place of the other, but each forming a distict substantive ground on which the penalty may be incurred. This is plainly indicated by the change of expression and taking up of new words in the second clause, *before such minister or justice is certified of;*" and by the repetition of the words, *shall join any persons in marriage,*" in the third clause. But it more plainly appears from the words following "parents, guardians, or masters," in the second clause, "*if any there be,*" and the words, "*if either party be a minor;*" thus making the second clause not a substitute for the first, but a new and further provision, applicable to the marriage of minors only, and operative only where there is a parent, guardian or master. These all show three several clauses or sentences, containing three distinct provisions; and by the language and structure of the clauses, the offence is complete, by joining any persons in marriage contrary to the provision of either clause. The first, following up the enactment in the third section, provides for publication of the intention of marriage generally and in all cases; the second provides, not an alternative or substitute for the first, but an independent addi-

tional regulation, that where either party is a minor, the consent of parents, guardians, or masters, if any there be, shall be had ; and the third provides, generally, that no marriage shall be solemnized otherwise than is expressly allowed by the act, and was intended, probably, to extend the penalty to the case of joining any persons in marriage, contrary to the provisions contained in the first and second sections of the act. The meaning of the act is, that it shall not be lawful to join a minor in marriage without the consent of the parent, guardian, or master, nor any persons without publication of the intention of marriage, or otherwise than is expressly allowed by the act.

Construing the act by itself, therefore, and without adverting to the policy of it, or the probable intention of the legislature, it plainly makes the fact of joining a minor in marriage, without the consent of parents, a distinct and substantive offence. It is solemnizing a marriage, unattended with one of several requisites, prescribed by the statute in a given case, and consequently is an act, constituted and declared to be an offence, which shall incur the penalty.

If it were allowable, in a case of this nature, to enter into the reason and policy of the law, it would be found, that the construction we have adopted is as clearly required by the reason and policy, as it is by the words, of the act. Marriage is a contract of the highest importance, not only to the parties, but to civil society ; and it is unquestionably both wise and fit, to subject it to such regulations, as will stop all private and clandestine marriages, and thus prevent those which are unwarrantable or illegal. To this end, and to guard against fraud and surprise, publication of the intention of the parties is a salutary regulation, and is wisely made indispensable in all cases ; and in the case of minors, whose judgments are not supposed to be matured, and whose feelings and passions expose them to acts of rashness and indiscretion, it is peculiarly fit that the consent of parents should also be required, not only as an additional security against fraud and surprise, but to preserve the peace and tranquility of families. In those governments which have been most distinguished for a well regulated system of laws, the consent of parents has been made an indispensable requisition. The civil law made the consent of the parent or tutor necessary at all ages, unless the children were emancipated, or out of the parent's power. The same provision appears to have been adopted in France and Holland, with this difference, as Blackstone says, that in France the sons could not marry without consent of parents, till thirty years of age, nor the daughters till twenty-five ; and in Holland, the sons were at their own disposal at twenty-five, and the daughters at twenty. It is true, that by the common law, if the parties themselves were of the age of consent, which was fourteen in males, and twelve in females, there wanted no other concurrence to make the marriage valid. But as early as the reign of *William III*, penalties

*Franklin,*
January,
1826.

Ellis
*vs.*
Hull.

of 100 pounds were laid on any clergyman who married a couple without publication of banns, or a licence, to obtain which there was an oath that the parties were of age, or, if under age, that they had the consent of parents or guardians. At length, by the statute 26 *Geo.* 2, ch. 33, all marriages celebrated by licence, where either of the parties was under twenty-one, without the consent of the father, or if he were not living, of the mother or guardian, were declared absolutely void. (1 *Blac. Com.* 463, 4.— 1 *T. Rep.* 96.) It is true, that by this act, the consent of parents was not necessary, where the marriage was by banns; for as the act required all banns of matrimony to be published, and all marriages to be solemnized, in the parish church of the parish in which the parties dwelt, notice to parents was supposed, and by the third section of the act, they might dissent to and prohibit the publication of banns, and thus prevent the marriage.    This act, which thus in effect prohibited the marriage of minors, and rendered it void, without consent of parents, is supposed to have been drawn by Lord Hardwich, and is said to have been warmly contested, as being an innovation upon the common law, and an unnecessary and impolitick restraint upon marriage.    Several attempts were made to repeal it, all of which, however, proved ineffectual, and it yet remains the law of England.    Although the policy of annulling the marriage may well be doubted, yet no doubt can be entertained as to the expediency of prohibiting it by the imposition of penalties. To this extent, it appears, the regulation has been adopted, and exists, in Connecticut.    There, it is not only necessary that the intention of marriage should be published, but the consent of parents or guardians of the parties under the control of parents or guardians must also be had; and the joining of any persons in marriage without such publication and consent is made penal. (1 *Swift's Dig.* 20, 42. *Reeve's Dom. Rel.* 196, 7, 9.)    In Massachusetts, a regulation in a similar form has existed from a very early period.    By an act of 1692, justices and ministers were empowered to marry persons, *having the consent of parents or guardians*, and *being, likewise, first published*.    In the revision of the laws in 1786, a similar provision was introduced; and by both acts it was made penal to solemnize any marriage without such assent and publication. (2 *Dane's Abr.* ch. 46, a. 5, p. 299. a. 2, p. 292.)    It can occasion no surprise, that a regulation, thus adopted and sanctioned by the most enlightened governments, should have been introduced here.    If there were no other argument in its support, the concurrent sense of other governments, thus expressed by their acts, would sufficiently attest its wisdom, and commend it to favour.    But it has other grounds to rest upon.    The right or authority which is thus secured to the parent, is founded in the relation which subsists between him and his children, and results, like all other parental rights, from the duties which he owes them.    It is his duty to maintain and educate his children; to form them for a life of usefulness and virtue; to afford them protection during the de-

*Franklin,*
January,
1826.

~~~~~~~

Ellis
*vs.*
Hull.

fenceless period of minority ; to guard them against rashness, fol-ly, and indiscretion ; and to impose upon them whatever res-traints, the accomplishment of these ends, and their true interest and happiness may require.    In a matter of so much moment to the happiness of a child, and the peace of his own family, as marriage, it is not to be supposed, that a wise and provident gov-ernment would be so regardless of the rights of the parent, that even his consent should not be required.    Such, as we have al-ready seen, is not the true construction of the statute.    Upon the words, as well as the obvious intention, the solemnizing of a marriage, where either party is a minor, without consent of pa-rents, is clearly prohibited ; and if we were allowed to enter into the question of policy, we could not refrain from saying, that the regulation is founded in the clearest fitness and expedi-ency.    It has been said, that the general opinion, and the prac-tice under the statute, have been otherwise in this part of the state ; if so, it is an error and abuse which ought to be correct-ed and stopped as early as possible.    The plaintiff 's declaration being sufficient, the consequence is, that the judgment of the county court must be reversed, and judgment entered for the plaintiff.

<div style="text-align:right">Judgment for the plaintiff, accordingly.</div>

Royce J. having been of counsel, did not sit on the trial.

*Benj. Swift* and *J. Smith,* for the plaintiff.

*Bates Turner, Asa Aldis* and *James Davis,* for the defendant.